IN RE the MARRIAGE OF: Cheryl K. VOECKS, Petitioner-Appellant,

v.

William E. VOECKS, Respondent-Respondent.

Court of Appeals

*No. 92–0855. Submitted on briefs September 1, 1992.—Decided September 15, 1992.*

(Also reported in 491 N.W.2d 107.)

184

On behalf of the petitioner-appellant, the cause was submitted on the brief of *Traycee England,* assistant corporation counsel of Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Sally L. Wellman,* assistant attorney general.
Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Cheryl Voecks appeals an order reducing William Voecks' child support obligation from $55 per week to $25 per month based on a decrease in William's income due to his incarceration. Cheryl contends that the trial court abused its discretion by reducing William's child support obligation. She argues that because William was incarcerated as a result of his intentional criminal conduct, his confinement is not a change of circumstances necessary to empower the trial court to modify child support. Because we conclude that the court had the power to modify child support and the reduction was a proper exercise of judicial discretion, we affirm the order and amended judgment.

Cheryl and William were divorced in 1985. The divorce judgment gave Cheryl custody of their minor daughter and required William to pay $55 per week in child support. The judgment also created a $6,000 lien on the homestead in favor of the child. The amount of the lien represented William's equity in the homestead. At the time of the divorce, William owned a furniture store and reported earnings of $21,000. William later owned and operated an excavation business.

In August 1988, William was arrested as a party to the crime of cocaine delivery. During the thirteen months that he was placed on bond, he sold his excavation company's assets to defray living costs because he had no other income. William was convicted of being a party to cocaine delivery in September 1989, and sentenced to seven years at Oxford federal correctional institution. His parole eligibility date is April 12, 1996.

William had $6,000 in debts and has no assets or other income.

Cheryl subsequently remarried, sold the homestead and moved to Connecticut with her husband and child. When the homestead was sold, $6,000 was placed in trust for the child. Cheryl's income is approximately $9,000 per year and her husband receives the salary of a professional engineer.

In September 1991, William requested a stay of the child support obligation and arrearage accrual until his release from prison. After a hearing, the trial court made the following findings: William earns $65 per month in prison including bonuses; he will be incarcerated until 1996, and his daughter will reach eighteen years of age in 1995; there is a $9,760 child support arrearage resulting from William's nonpayment while he was incarcerated until he filed his motion for reduction; William established a substantial change in circumstances due to his incarceration; and it is equitable under the circumstances to reduce William's child support obligation to $25 per month. The court ordered that William's child support obligation be reduced to $25 per month until William's release or the child's majority, whichever happens first.

Cheryl first challenges the court's authority to modify child support based upon William's incarceration and resultant decrease in income. Cheryl argues that William's income reduction was a voluntary, self-inflicted change in financial condition caused by his intentional criminal conduct. She urges us to analogize this case to the "shirking" cases, where the payor's ability to pay was decreased because the payor voluntarily failed to exercise his or her full capacity to earn. *See Roellig v. Roellig,* 146 Wis. 2d 652, 658–59, 431 N.W.2d 759, 762 (Ct. App. 1988).

In "shirking" cases, courts have refused to modify child support obligations based on the payor's actual earnings and instead look to the payor's earning capacity. *Id.* Cheryl concludes that because William's decreased income resulted from his voluntary criminal activity, he is not entitled to a reduction of his child support obligation. Cheryl also points to cases from other jurisdictions that hold incarceration is not a change in circumstances warranting modification of child support.

We conclude that the "shirking" cases are inapplicable. The "shirking" cases involve deliberate actions by the payor with the intent to reduce income to avoid paying child support. Although William's incarceration resulted from his deliberate criminal acts, there is no evidence that William engaged in the criminal conduct with the intent to reduce his income to avoid paying child support. While we do not wish to reward criminal conduct, we cannot conclude, as a matter of law, that criminal conduct must be treated as deliberate conduct designed to reduce income to avoid paying child support. Therefore, we conclude that even though incarceration results from intentional criminal conduct, it is a change in circumstances that gives a trial court competence to review a child support order. *See Parker v. Parker,* 152 Wis. 2d 1, 4, 447 N.W.2d 64, 65 (Ct. App. 1989). We also conclude that incarceration is a factor that the court may consider when determining whether it should exercise its discretion to modify child support. *Id.* at 6, 447 N.W.2d at 66.

Cheryl argues that our decision in *Parker* supports her contention that child support should not be reduced as a result of imprisonment resulting from voluntary and intentional criminal acts. We do not agree. The trial

188

court in *Parker* noted that the payor had been found in contempt for failure to pay child support even though he had income, and that his probation was revoked and he was incarcerated for felony theft. It concluded, based on these facts, that a reduction in child support would be inappropriate.

A trial court's decision to modify a child support order will be upheld if the court rationally exercised its discretion. *Id.* at 3, 447 N.W.2d at 65. All that is required for us to affirm a trial court's exercise of discretion is a demonstration that the court examined the evidence before it, applied the proper legal standards and reached a reasoned conclusion. *Abitz v. Abitz,* 155 Wis. 2d 161, 174, 455 N.W.2d 609, 615 (1990). *Parker* does not preclude the modification of child support obligations resulting from imprisonment any more than it compels such a result. Here, the court applied the proper legal standards to the facts and reached a reasoned conclusion. The court properly exercised discretion by determining that a reduction in child support was appropriate.

██

Finally, Cheryl contends that the trial court abused its discretion by failing to enumerate the factors set forth in *Parker* when it decided to reduce William's child support obligation. While a failure to specify the reasons for the exercise of discretion may in certain cases be an abuse of discretion, we may examine the record to determine whether there is a sufficient basis to support the court's discretionary determination. *Abitz,* 155 Wis. 2d at 174, 455 N.W.2d at 615.

In *Parker,* we held that the trial court should consider "the intentional nature of the crime involved, the likelihood of future income, and other relevant evi-

dence." *Id.* at 6, 447 N.W.2d at 66. This evidence was before the trial court and the record discloses that it considered the relevant factors.

In addition to these factors, the court must consider each parent's earning capacity and total economic circumstances. Section 767.32(1), Stats. The trial court examined William's economic circumstances, including the dramatic reduction in William's income resulting from the closing of his prior business operation and his present incarceration. It noted that William was $6,000 in debt, his earning capacity would be limited to $65 per month for the next four years, he was currently $9,760 in arrears and another $10,000 arrearage would accrue during his incarceration under the original judgment if not modified.

Next, the court examined the evidence of Cheryl's total economic circumstances that was available to it.[1] The court found that the family "is in reasonable financial condition." Cheryl contends that the trial court is not allowed to consider her present husband's income. However, our supreme court held in *Abitz* that a review of a parent's total economic circumstances includes consideration of the stepparent's income. *Id.* at 175, 455 N.W.2d at 615. Finally, the trial court noted that William's daughter would reach majority before his release from prison. We conclude that these are proper factors upon which the court may exercise its discretion to grant

---

[1]Cheryl did not testify at the hearing. She claims that the trial court refused to allow her to testify by telephone, but the record does not reflect an offer or a refusal of Cheryl's testimony. *See In re Ryde,* 76 Wis. 2d 558, 563, 251 N.W.2d 791, 793 (1977).

a reduction in William's child support obligation. We affirm that order and judgment.

*By the Court.*—Judgment and order affirmed.