**Todd Allen CLARK, Appellant–Respondent,**

v.

**Michelle D. CLARK, Appellee–Petitioner.**

No. 35A05–0801–CV–26.

Court of Appeals of Indiana.

June 10, 2008.

Todd Allen Clark, Bunker Hill, IN, Appellant pro se.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Todd Allen Clark (Clark), appeals the trial court's Order denying his Verified Petition for Abatement and/or Modification of Child Support Order.

We reverse and remand.

### ISSUE

Clark raises one issue on appeal, which we restate as: Whether the trial court abused its discretion in denying his petition in light of our supreme court's decision in *Lambert v. Lambert*, 861 N.E.2d 1176 (Ind.2007).

### FACTS AND PROCEDURAL HISTORY

On June 15, 2007, the trial court ordered Clark to pay child support in the amount of fifty-three dollars per week. Clark is now incarcerated and claims to be unable to fulfill his child support obligation. Although he has a prison job assignment, Clark makes less than twenty-one dollars per month. On November 16, 2007, Clark filed his Verified Petition for Abatement and/or Modification of Child Support Order, requesting the trial court to reduce,

revoke, or abate his child support obligation until his release from incarceration, which is scheduled for March 10, 2013. In his petition, he alleges that his incarceration has created a substantial change in circumstances which would warrant modification of his child support obligations.

On November 20, 2007, without a hearing, the trial court denied Clark's motion stating that

> The court finds that the correct support order for [Clark] is based upon minimum wage for [Clark]. It is contrary to public policy for a person who has engaged in criminal conduct to completely avoid his support obligations. This court will not *impute an income* figure for an incarcerated individual that owes child support obligations less than minimum wage.

(Appellant's App. p. 6) (emphasis added).

Clark now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Clark contests the trial court's denial of his petition. Specifically, he claims that the trial court erred in denying his petition to reduce, revoke or abate his child support obligation in light of our supreme court's decision in *Lambert v. Lambert*, 861 N.E.2d 1176 (Ind.2007).

▮ In reviewing a determination of whether child support should be modified, we will reverse the decision only for an abuse of discretion. *In re Marriage of Kraft*, 868 N.E.2d 1181, 1185 (Ind.Ct. App.2007). We review the evidence most favorable to the judgment without reweighing the evidence or reassessing the credibility of witnesses. *Id.* An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. *Id.*

A modification of a child support order is governed by Ind.Code § 31–16–8–1, which states that "[p]rovisions of an order with respect to child support ... may be modified or revoked." Except as provided in another statute, which is not applicable here, modification may be made only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

I.C. § 31–16–8–1. Here, Clark appears to proceed under subsection (1).

### I. *Incarceration*

Established case law holds that incarceration due to voluntary criminal conduct is not a valid rationale for abatement of an existing child support order. *See, e.g., Murphy v. Murphy*, 860 N.E.2d 927 (Ind. Ct.App.2007); *Holsapple v. Herron*, 649 N.E.2d 140 (Ind.Ct.App.1995); *Davis v. Vance*, 574 N.E.2d 330 (Ind.Ct.App.1991). However, in light of our supreme court's rationale in *Lambert v. Lambert*, 861 N.E.2d 1176 (Ind.2007), we no longer believe these cases properly reflect the current status of the law.

In *Lambert*, when Lambert and his former wife were about to be divorced, it was already apparent that Lambert was headed to prison. *Id.* at 1176. As part of the provisional order, Lambert agreed to pay

$277 per week in child support. *Id.* After the provisional order took effect, but before the final hearing on the dissolution of marriage, Lambert was convicted of two Counts of "improper and inappropriate physical contact" with children and sentenced to a period of incarceration. *Id.* at 1177. At the time of the final hearing, Lambert was in jail and earning virtually nothing. *Id.* Still, the final divorce decree ordered that he continue to pay the $277 in weekly child support. *Id.* Our supreme court held that incarceration does not relieve parents of their child support obligations. *Id.* However, the supreme court concluded that "in determining support orders, courts should not impute potential income to an imprisoned parent based on pre-incarceration wages or other employment-related income, but should rather calculate support based on the actual income and assets available to the parent." *Id.* In its analysis, our supreme court was very firm in distinguishing its holding from the situation at hand, i.e., how to treat incarceration in setting an initial child support order from a petition to modify an existing support order. *See id.*

Although our supreme court limited *Lambert* specifically to the initial determination of a child support order, we now conclude that its rationale applies equally to a request for modification of a child support order based on changed circumstances due to incarceration. In *Lambert,* our supreme court focused on an approach that would most likely produce support while at the same time underwrite the overarching policy goal of protecting the child's best interest. *Id.* at 1179. Tailoring the situation of incarceration to the language of our Child Support Guidelines, the court stated that while "most criminal activity reflects a voluntary choice, and carries with it the potential for incarceration and consequent un-

employment, still, the choice to commit a crime is not quite the same as 'voluntarily fail[ing] or refus[ing] to work or to be employed.'" *Id.* at 1180 (quoting Child Supp. G. 3 cmt. 2(c)(2)). As such, the court emphasized that the child support system is not meant to serve a punitive purpose. *See id.* Rather, the system is an economic one, designed to measure the *relative contribution* each parent should make—and is capable of making—to share fairly the economic burdens of child rearing. *Id.* (emphasis added). Thus rejecting a system that would grant incarcerated parents a full reprieve from their child support obligations, the *Lambert* court further opined that "imposing impossibly high support payments on incarcerated parents acts like a punitive measure, and does an injustice to the best interests of the child by ignoring factors that can, and frequently do, severely damage the parent-child relationship." *Id.* Clarifying, the supreme court stated:

> high support orders continue through a period of incarceration and thus build arrearages, the response by the obligor is to find more methods of avoiding payment. To the extent that an order fails to take into account the real financial capacity of a jailed parent, the system fails the child by making it statistically more likely that the child will be deprived of adequate support over the long term.

*Id.* at 1181.

■ Granted, while Clark's child support payment is set at a mere fifty-three dollars per week, this order is high compared to the twenty-one dollars he makes per month from his prison job assignment. Leaving his support order at the current level through Clark's incarceration would build a high arrearage burdening Clark's re-entry into the community upon his release. In light of our supreme court's

analysis in *Lambert,* we conclude that his incarceration serves as a changed circumstance so substantial and continuing as to make the terms of his support order unreasonable pursuant to I.C. § 31–16–8–1.

■ Even though we find changed circumstances, we are mindful that parents have an abiding duty to provide support for their dependent children. In evaluating these changed circumstances, courts remain obligated under the Child Support Guidelines to consider all sources of income or other property when calculating support payments upon modification. As such, we hold that the support obligation of an incarcerated person should be set in light of that person's actual earnings while incarcerated and other assets of the incarcerated person practically available to provide such support.

In advancement of the goal to have child support obligations reflect as accurately as possible the present earning capacity of parents, the *Lambert* court endorsed the practice of incorporating a prospective provision in the child support orders issued in cases involving incarcerated parents to automatically return the child support obligation to the pre-incarcerated level upon the release of the parent. *See id.* at 1182. This would relieve the custodial parent from having to monitor when the incarcerated parent will be released so that modification may be timely sought, and shifts the responsibility to the parent who has the knowledge and information about post-incarceration employment. *See id.* We endorse the same practice here.

In the instant case, although Clark provided evidence of his monthly income from his prison job assignment, the record is silent as to whether he has any other income or assets that are practically available and can be used to underwrite his support obligation. Therefore, we reverse the trial court's decision and remand the

case for further proceedings in accordance with this opinion. However, our review does not end here.

## II. *Minimum Wage as Public Policy*

■ In its Order, the trial court appears to imply that public policy demands that an incarcerated parent's child support obligation cannot be set at less than minimum wage. We are unaware of the existence of such a public policy. Rather, the Commentary to Ind. Child Support Guideline 2 (emphasis added) provides that

> [T]he Guidelines do not establish a minimum support obligation. Instead *the facts of each individual case must be examined and support set in such a manner that the obligor is not denied a means of self-support at a subsistence level. It is, however, recommended that a specific amount be set.* Even in situations where the noncustodial parent has no income, courts have routinely established a child support obligation at some minimum level.

Thus, minimum wage should not be interpreted as a cut-off amount for child support payments.

## CONCLUSION

Based on the foregoing, we conclude that the trial court improperly denied Clark's Petition for Abatement and/or Modification of Child Support Order.

Reversed and remanded for further proceedings in accordance with this opinion.

BAKER, C.J., concurs.

ROBB, J., dissents with separate opinion.

ROBB, Judge, dissenting.

I respectfully dissent. The majority acknowledges the established case law holding that incarceration due to voluntary criminal conduct is not a valid reason to

abate an existing child support order. *See* op. at 1023–24 (citing *Murphy v. Murphy*, 860 N.E.2d 927 (Ind.Ct.App.2007); *Holsapple v. Herron*, 649 N.E.2d 140 (Ind.Ct. App.1995); *Davis v. Vance*, 574 N.E.2d 330 (Ind.Ct.App.1991)). The majority also acknowledges that in the recent decision of *Lambert v. Lambert*, 861 N.E.2d 1176 (Ind.2007), our supreme court limited its holding that courts should not impute potential income to an imprisoned parent "specifically to the *initial* determination of a child support order...." Op. at 1024 (emphasis added). Nonetheless, despite noting that "our supreme court was very firm in distinguishing its holding from the situation at hand," *id.*, the majority concludes that the rationale of *Lambert* applies equally to a request for *modification* of a child support order based upon changed circumstances due to incarceration. I cannot agree.

The facts presented by *Lambert* were that when the parties' dissolution decree was entered, father was incarcerated. The trial court entered a child support order based upon father's pre-incarceration income. In considering whether the trial court's support order was in error, our supreme court noted that most reported cases regarding how to treat incarceration for the purpose of determining income deal with an existing support order and whether incarceration justifies a reduction. The court then stated that it "must be careful to distinguish that issue from the case at hand," which dealt with the impact incarceration has on setting a support order. 861 N.E.2d at 1177. Given *Lambert'*s deliberate and careful distinction between existing and new support orders, I believe it is our supreme court's exclusive province to expand the parameters of *Lambert* in such a way as to include the situation presented in this case. Until it does, I believe that the existing case law holding that an abatement of an existing child support order is not warranted due to incarceration of one of the parties, *see Ross v. Ross*, 581 N.E.2d 982, 983 (Ind.Ct. App.1991), continues to control. I would affirm the trial court.